UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

I.B.E.W. LOCAL 915 HEALTH
& WELFARE FUND, et al.,

Plaintiffs,

vs.                                                    Case No. 8:04-CV-1586-T-27TBM

ROSSI ELECTRIC COMPANY, INC.
d/b/a ROSSI ELECTRIC COMPANY
INC. OF R.I., et al.,

Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion for Partial Summary Judgment as to Liability[1] (Dkt. 30), to which Defendant has responded in opposition (Dkt. 34). The parties submitted supplemental briefing (Dkts. 38-40) at the request of the Court (Dkt. 37). Upon consideration, Plaintiffs' motion is DENIED, as set forth herein.

### *Background*

Plaintiffs initiated this action to recover unpaid benefit fund contributions pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132, 1145 and the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff I.B.E.W. Local 915 ("Local 915") is an employee organization under ERISA, 29 U.S.C. § 1002(4), and a labor organization under the LMRA, 29 U.S.C. § 152(5). (Am. Compl., Dkt. 25, ¶ 10). Defendant Rossi Electric Company, Inc.

---

[1] Plaintiffs' motion addresses only the liability of Defendant Rossi Electric Company, Inc.

1

("Rossi Electric") is an electrical contractor and an employer under 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2). (Dkt. 25, ¶ 11(a)). Defendant Vincent Rossi is the sole owner and president of Rossi Electric. (Dkt. 25, ¶ 12).

In July 2002, by signing a Letter of Assent, Rossi Electric entered into a collective bargaining agreement (hereinafter "CBA") between Local 915 and Florida West Coast Chapter - NECA ("NECA"), which had been negotiated by those parties in 2001. (Ciacciarelli Depo. Exh. 3; Rossi Aff. ¶ 4). In the Letter of Assent, Rossi Electric designated NECA as its multi-employer representative to engage in collective bargaining on its behalf. *Id.* Specifically, the Letter of Assent provided:

> In signing this letter of assent, [Rossi Electric] does hereby authorize Florida West Coast Chapter, NECA as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved Inside labor agreement between the Florida West Coast Chapter, NECA and Local Union 915, IBEW. In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. (Ciacciarelli Depo. Exh. 3). This authorization, in compliance with the current approved labor agreement, shall become effective on the 1st day of July, 2002.

At the time Rossi Electric signed the Letter of Assent in July 2002, NECA and Local 915 were signatories to a CBA that expired November 30, 2003. (Ciacciarelli Depo. at 25, ll. 5-7; Exh. 4). The CBA automatically renewed "from year to year thereafter, from December 1 to November 30 of each year, unless changed or terminated." (Ciacciarelli Depo., Exh. 4 at 1).

In the instant action, Plaintiffs allege that Defendants breached the CBA by: 1) failing to pay their electrical construction employees the wages negotiated in the CBA from December 2003; 2) failing to submit monthly payroll reports and corresponding monthly contributions from December 2003; and 3) failing to remit all other contributions from October 2002 to November 2003. (Dkt.

2

25, ¶ 16). Defendants admit that they "no longer made contributions to the various fringe benefit funds for services performed by its employees on or after December 1, 2003." (Rossi Aff., ¶ 18). However, Defendants allege that they terminated the CBA with Local 915 on December 1, 2003 and were therefore relieved from all further obligations under the Agreement. (Dkt. 28, ¶ 2).

Plaintiffs argue that Defendants could not directly terminate the CBA without first terminating the NECA's bargaining authority. The Letter of Assent provided the means by which Rossi Electric could terminate NECA's authority:

> It shall remain in effect until terminated by the undersigned employer giving written notice to the Florida West Coast Chapter, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement. (Ciacciarelli Depo., Exh. 3).

Plaintiffs argue that Defendants did not terminate NECA's authority, either effectively or timely.

Defendants contend that they both terminated NECA's authority and terminated the CBA directly by virtue of a letter from John Paul Ciacciarelli, Rossi Electric's controller. The letter was sent on December 1, 2003, the day following the November 30, 2003 expiration of the initial CBA. The letter read as follows:

> As of the date of this letter, Rossi Electric will cease it [sic] operation under the Local Union 915. Due to the financial strain this Union has placed on this Company and the lack of skilled qualified electricians, we can no longer survive doing business in this manner. If you have any questions, Please feel free to contact me. (Ciacciarelli Depo. at 12, l. 1-13 l. 3; Exh. 7).

The letter was sent to NECA via facsimile and regular mail (Rossi Aff. ¶ 10), but was addressed to Plaintiff Gary Hill, who was the Secretary of the Board of Trustees for the Plaintiff Trust Funds. (Dkt. 25, ¶ 8). According to Mr. Rossi, Local 915 received the letter:

> Although Mr. Hill was the business manager of Local 915 and was not an employee of NECA as stated in Mr. Ciacciarelli's letter, nevertheless Local 915 actually

3

received that letter. I know this because Mike Nagle, a representative of Local 915, told me in a telephone conversation shortly after the letter was sent that Local 915 had received the letter from NECA and wanted to meet with me to discuss it. (Rossi Aff. ¶ 11).

In this motion for partial summary judgment, Plaintiffs argue that Ciacciarelli's letter was not a timely or effective termination of NECA's authority, and that in any event, Defendants did not properly terminate the CBA. Therefore, they argue that Defendants are liable for their alleged breaches of the CBA, including unpaid benefit fund contributions.

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## *Discussion*

As an initial matter, the Court notes that although Plaintiffs style their motion as a "partial summary judgment as to liability," they clearly identify the "sole issue" before the Court as whether Defendants properly terminated the CBA. (Dkt. 30 at 10). Plaintiffs have not briefed why Defendants would be liable under ERISA or the LMRA, and they make only a minimal effort to address the application of the majority of Defendants' affirmative defenses.[2] Accordingly, to the extent Plaintiffs seek summary judgment as to liability, the Court is not equipped to make such a determination. The Court will instead evaluate Plaintiffs' motion as one to test the sufficiency of Defendant's second affirmative defense, which is identical to Plaintiffs' "sole issue." Specifically, Defendants' second affirmative defense alleges that Defendants properly terminated the Agreement with Local 915 and were therefore relieved from all further obligations under the Agreement.[3]

An employer may not directly terminate a CBA when it is represented by a multi-employer

---

[2] The single case cited by Plaintiffs, *Laborers Health and Welfare Trust Fund for N. Ca. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988), does not support the wholesale rejection of Defendant's affirmative defenses, as Plaintiffs contend it does. *Cf. NLRB v. Hayden Elec. Inc.*, 693 F.2d 1358, 1365-66 (11th Cir. 1982) ("it is well-established that a union's acquiescence in or implied consent to an employer's untimely or ineffective withdrawal will excuse that employer's subsequent refusal to honor a bargaining agreement).

[3] Consequently, the Court does not address the propriety of moving for summary judgment on a single issue, which the parties have also not addressed. *Compare SEC v. Thrasher*, 152 F. Supp. 2d 291, 295-96 (S.D.N.Y.2001) (partial summary judgment on particular issues not proper) *with McDonnell v. Cardiothoracic & Vascular Surgical Assocs., Inc.*, No.C2-03-0079, 2004 WL 1234138 (May 27, 2004, S.D. Ohio) (summary judgment on particular issues proper).

bargaining association such as the NECA. *NLRB v. Hayden Elec. Inc.*, 693 F.2d 1358, 1365 (11th Cir. 1982) (absent withdrawal of NECA's bargaining authority, employer "had no right to bargain individually with the Union); *Local 257, Int'l Brotherhood of Elec. Workers, ALF-CIO v. Grimm*, 786 F.2d 342, 346 (8th Cir. 1986); *see also* Ciacciarelli Depo. Exh. 4.[4] The dispositive question is whether Defendants properly terminated NECA's authority, which would in turn allow them to directly terminate the CBA. . "[A] stated intent to withdraw from multiemployer bargaining is effective only if it is both timely and unequivocal." *Haas Elec., Inc. v. NLRB*, 299 F.3d 23, 27 (1st Cir. 2002). According to the terms of the Letter of Assent, in order to withdraw NECA's bargaining authority, Defendants were required to supply: 1) written notice; 2) to NECA and to Local 915; 3) at least one hundred fifty (150) days prior to the anniversary date of the current CBA.

*1. Effectiveness*

Ciacciarelli's letter was an effective, unequivocal revocation of NECA's authority. "The requirement that the stated intent be unequivocal is met if the notice is 'unambiguous.'" *Haas*, 299 F.3d at 27-28. Ciacciarelli's December 1, 2003 letter to Hill stated: "As of the date of this letter, Rossi Electric will cease it [*sic*] operation under the Local Union 915. Due to the financial strain this Union has placed on this Company and the lack of skilled qualified electricians, we can no longer survive doing business in this manner."

Ciacciarelli's letter unequivocally cancelled Rossi Electric's contract with the union and provided reasons for the cancellation. The letter was faxed and mailed to NECA. Further, it is

---

[4] Section 1.02(a) of the CBA provides that only "*an Employer withdrawing representation from the Chapter or not represented by the Chapter*" may change or terminate an the CBA. By logical implication, then, an employer who is represented by the NECA may not change or terminate the CBA. A contrary conclusion would eviscerate the meaning of the Letter of Assent.

undisputed that Local 915 received a copy of the letter.[5] Although the letter did not reference the 150-day time period, that is not fatal to Defendant's argument. Given Rossi Electric's unequivocal cancellation of its contract with Local 915, the obvious implication of the letter was that NECA was no longer authorized to bargain with Local 915 on behalf of Rossi Electric.

An employer need not use "precise language in articulating its intent to withdraw NECA's authority." *Haas Electric*, 299 F.3d at 29. The Letter of Assent does not require magic words to effect termination, such as an express revocation of NECA's authority. *See e.g., Haas Electric* (finding unequivocal termination by letter that stated in part: "Please be notified that as of the date posted on this letter, Haas Electric Inc . . . is terminating the Labor Agreement between Haas Electric Inc., and [the Union]. Haas Electric Inc., also acknowledges that this intent becomes final 150 days from date of notification, according to mutual agreement."); *NLRB v. Hayden Elec. Inc.*, 693 F.2d 1358, 1364 (11th Cir. 1982) *(finding sufficient notice that stated in part: "this letter is to advise, 150 days in advance, of [the Company's] intention to exercise [its] option to cancel [its] contract with the local union 728.").*

2. *Timeliness*

Plaintiffs also argue that Ciacciarelli's December 1, 2003 letter was not a timely termination of the 2003-2004 CBA because it was not sent 150 days prior to the expiration date of November 30, 2003. Absent other equitable defenses, the Court would agree that the letter was not a timely termination of the 2003-2004 CBA.[6] *See NLRB v. Black*, 709 F.2d 939, 941 n.3 (5th Cir. 1983)

---

[5] For the purposes of the summary judgment, the Court accepts that Local 915 received the letter. Rossi has stated in his affidavit Local 915 received the letter from the NECA, although it was misaddressed. (Rossi Aff. ¶ 11).

[6] The Court notes that the December 1, 2003 letter constituted a timely termination of the second successor CBA, which would have been in effect from December 1, 2004 to November 30, 2005. Although Ciacciarelli's December 1, 2003 letter was sent well in advance of the 150 days preceding the termination of the CBA (on

7

(failure to withdraw NECA's authority before expiration date bound employer to subsequent agreement); *Grimm*, 786 F.2d at 345 (employer's assignment of bargaining authority is an ongoing delegation, ending only on formal termination). Although Ciacciarelli's letter invited questions, there is no evidence that NECA or Local 915 sought to clarify the meaning or intention of the letter.

"[I]t is well-established that a union's acquiescence in or implied consent to an employer's untimely or ineffective withdrawal will excuse that employer's subsequent refusal to honor a bargaining agreement." *NLRB v. Hayden Elec. Inc.*, 693 F.2d 1358, 1365-66 (11th Cir. 1982). Rossi avers in his affidavit that neither NECA nor Local 915 ever questioned Rossi Electric's termination of the CBA as immediate and effective. Rather, at an April 2004 meeting, Rossi avers that: Local 915 dealt directly with Rossi Electric and did not require NECA to act as its representative; that the purpose of the meeting was to determine if Rossi Electric would become a union shop again; and that Local 915 asked Rossi Electric to re-sign the Letter of Assent. (Rossi Aff. ¶¶ 13-16).

Based on the foregoing, there is a material issue of fact as to whether the untimeliness of Rossi Electric's December 1, 2003 termination is excused by Plaintiffs' acquiescence and acceptance of the letter. *See Hayden Elec. Inc.*, 693 F.2d at 1365-66.

3. *Termination of the CBA*

The CBA itself required separate procedures for termination. Specifically, the CBA required an entity desiring to terminate the Agreement to "provide written notification at least ninety (90) days prior to the expiration date of the Agreement or any anniversary date occurring thereafter." (Ciacciarelli Depo., Exh. 4 at 1). In addition, section 1.02(f) of the CBA specified that "notice of

---

November 30, 2004), this is not fatal to Defendants' argument. *See Haas Electric*, at 29. n.6 (letter sent eighteen months before the expiration date of the CBA could effect a termination).

a desire to terminate this Agreement shall be handled in the same manner as a proposed change." (Ciacciarelli Depo., Exh. 4 at 2). The provisions applying to a change required a party to: (1) provide specific notice of the proposed change no later than the first negotiating meeting; (2) submit unresolved disputes to the Council on Industrial Relations for adjudication; and (3) have weekly settlement talks by the negotiating committee prior to the Council's meeting. *Id.*

It is undisputed that Defendants' termination of the 2003-2004 CBA was untimely. Moreover, Ciacciarelli testified in his deposition that none of Rossi Electric's problems with the Union were ever submitted to the Council on Industrial Relations. (Ciacciarelli Depo. at 110, ll. 16-19). It does not, therefore, appear from the record that Defendants followed the necessary prerequisites for terminating the 2004-2005 CBA. However, for the reasons discussed, the Court finds there is a material issue of fact as to whether these failures were excused by Local 915's acquiescence in and acceptance of Rossi Electric's notice of termination.

### *Conclusion*

Material issues of fact preclude entry of partial summary judgment. Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt. 30) is therefore **DENIED**.

**DONE AND ORDERED** in chambers this 27th day of December, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record